UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LEGAL SERVICES CORPORATION,
            *Plaintiff-Appellee,*

v.

CLIENT CENTERED LEGAL SERVICES OF
SOUTHWEST VIRGINIA, INCORPORATED,
            *Defendant-Appellant.*

No. 02-2068

Appeal from the United States District Court
for the Western District of Virginia, at Abingdon.
James P. Jones, District Judge.
(CR-01-38-1)

Argued: September 23, 2003

Decided: October 22, 2003

Before LUTTIG, MICHAEL, and GREGORY, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Gerald L. Gray, GERALD GRAY LAW FIRM, Clint-wood, Virginia, for Appellant. Francis Hewitt Casola, WOODS, ROGERS & HAZLEGROVE, P.L.C., Roanoke, Virginia, for Appel-lee. **ON BRIEF:** R. Lucas Hobbs, WOODS, ROGERS & HAZLE-GROVE, P.L.C., Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Client Centered Legal Services of Southwest Virginia, Inc. ("CCLS") appeals from an order of the district court granting summary judgment in favor of Legal Services Corporation ("LSC") and ordering CCLS to hold certain real estate in constructive trust for the benefit of LSC. Because CCLS contractually agreed to follow the direction of LSC as to the "use or disposition" of all property purchased with LSC funds when it applied for an LSC grant, we affirm.

I.

The instant dispute concerns the scope of LSC's authority over the disposition of certain real property purchased by CCLS with LSC funds upon CCLS's termination as a grantee of LSC.

From 1979 through 1982, CCLS, a non-profit corporation that provides legal services to low-income residents, received its funding exclusively from LSC, a congressionally-created non-profit organization that contracts with and distributes funds to legal aid programs, such as CCLS. *See* 42 U.S.C. § 2996e(a)(1)(A) (1994). In its annual grant applications to LSC during these years, CCLS was required to agree to a series of conditions, known as grant assurances, regulating its expenditure and use of LSC funds. Relevant to this case, paragraph 12 of the grant assurances provided that,

> [i]f this grant is terminated before its expiration date, or if applicant ceases to be a grantee of Legal Services Corporation after the expiration of this grant, applicant hereby gives assurance that it will follow the Corporation's directions with respect to the use or disposition of fund balances, records, and any equipment, supplies, or property purchased with grant funds.

J.A. 262, 268, 280. Both before the district court, J.A. 540 n. 2, and at oral argument, CCLS admitted that it agreed to these grant assurances when it applied for an LSC grant.

In or about March 1982, CCLS became interested in purchasing, with surplus funds from previous LSC grants, a two-acre property and house in Castlewood, Virginia (the "Phillips property") for use as an office. Before it could use LSC funds to purchase real estate, however, CCLS first needed to obtain the approval of LSC, which it did in an April 15, 1982, letter from Marjorie McDiarmid, Regional Director of LSC, to Hugh O'Donnell, Executive Director of CCLS. According to the McDiarmid letter, LSC's consent was "based upon the documentation which [O'Donnell] supplied in compliance with the 'Procedures on the Purchase or Sale of Real Estate' issued by [LSC's regional office] and in particular on" five documents relating to the condition, purchase and future use of the property, "together with [LSC's] reliance upon the commitments made in [CCLS's] cover memo of April 2, 1982, [CCLS's] Board resolution of April 7, 1980, and the 'Agreement As To Disposition of Property' of April 19, 1982 [sic][1]." J.A. 258.

These final three documents each contained provisions relating to the disposition of the Phillips property. In the April 2, 1982, cover memo, CCLS agreed "not to dispose of the new property without first obtaining the approval of [LSC] as to the disposition of the property and of the proceeds." J.A. 236. The April 7, 1980, Board resolution provided that "in the event that CCLS cease[d] to be a grantee of [LSC], the Board of Directors of CCLS hereby recognizes the paramount interest of [LSC] in all assets purchased with [LSC] funds and agree[d] to seek prior advice and approval from [LSC] as to the sale, transfer or other disposition of any such asset." J.A. 244. And, the April 9, 1982, "Agreement As To Disposition of Property" stipulated that CCLS "will not sell, encumber, or otherwise dispose of any interest" in the Phillips property "without the advance written approval of [LSC]." J.A. 245.

---

[1]It appears that the "Agreement As To Disposition of Property" was actually signed on April 9, 1982, *before* McDiarmid's April 15, 1982 letter, not, as McDiarmid's letter states, on April 19, 1982. J.A. 245.

Throughout the communications related to the Phillips property in April 1982, neither the parties nor any of the documents referenced by them in their written correspondence made reference to the obligations undertaken by CCLS in the grant assurances.

CCLS continued to receive grants from LSC without interruption until December 31, 2000, when, as a result of a competitive bidding process, LSC distributed its grant for the southwest Virginia area to Southwest Virginia Legal Aid Society ("SVLAS"), a different legal services provider, and CCLS ceased to be a grantee of LSC.[2] A month later, on February 5, 2001, LSC asserted its interest in the Phillips property and directed CCLS to either transfer the property to LSC, sell the property and return the proceeds to LSC, or buy the property for fair market value from LSC. J.A. 308-A. When CCLS failed to follow LSC's direction, LSC ordered CCLS to vacate the property and to transfer possession to SVLAS by March 16, 2001. J.A. 308. CCLS again refused.

## II.

On April 20, 2001, LSC brought suit against CCLS for breach of contract and requested that the district court declare the rights of the parties, place the Phillips property in constructive trust for the benefit of LSC, and order CCLS to vacate and transfer the property as directed by LSC. J.A. 10. On August 14, 2002, in response to cross motions for summary judgment, the district court awarded summary judgment to LSC and denied summary judgment to CCLS. Pursuant to LSC's request, the court placed the Phillips property in construc-

---

[2]This competitive bidding process was the subject of a lawsuit by CCLS against John Eidleman, an employee of LSC, in which CCLS alleged that Eidleman conspired with SVLAS against CCLS in the grant competition. This court dismissed CCLS's suit because it had no jurisdiction to review the actions of LSC. *See O'Donnell* v. *Eidleman*, No. 00-1901 (4th Cir. June 25, 2001) (unpublished). CCLS now attempts to use these same claims of impropriety in an "unclean hands" defense to LSC's contract claim. The district court rejected this defense based on its finding that CCLS had not "presented any evidence to support its claim that there was a conspiracy between the successful grantee and LSC to undermine CCLS." J.A. 551. After a review of the record, we agree.

tive trust for LSC's benefit. The district court based its order on the plain language of paragraph 12 of the grant assurances, which provides that "if [CCLS] ceases to be a grantee . . . it will follow [LSC's] directions with respect to the use or disposition of property purchased with grant funds." J.A. 548. It explained,

> the contract covers the use of any and all grant money received by CCLS, and by its plain language includes the funds used to purchase the Phillips property. Thus CCLS is bound by its contract and must follow LSC's instructions with respect to the use or disposition of the property, now that it no longer enjoys grantee status.

*Id.* The district court rejected CCLS's argument that the April 1982 letters and the documents mentioned therein superceded the obligations undertaken by CCLS in the grant assurances reasoning that "the more general provision included in the grant assurances cannot be trumped by the specific language of the transaction documents" when the two do not conflict. J.A. 549-50. The district court also dismissed CCLS's affirmative defenses of unclean hands, the merger doctrine, the statute of frauds and the rule against perpetuities, as not "viable." J.A. 550-51.

### III.

On appeal, CCLS again argues that the grant assurances do not apply to the purchase of the Phillips property because they conflict with the more specific contractual obligations undertaken by CCLS as part of the April 1982 purchase. As it did before the district court, however, CCLS fails to explain why LSC's authority to direct the disposition of the Phillips property under the grant assurances would not include, rather than conflict with, the narrower requirement of the April 1982 documents that CCLS obtain LSC's consent before it takes any action that would affect the disposition of the property. CCLS also reasserts its argument that the grant assurances have been rendered invalid by the doctrine of unclean hands and the rule against perpetuities.

Upon review of the parties' briefs and their oral arguments, and upon our consideration, it is hereby ordered that the judgment of the district court is affirmed on the reasoning of that court.

*AFFIRMED*